Rose Marie O'DOWD and George O'Dowd, Plaintiffs-Appellants,

v.

SOUTH CENTRAL BELL, Defendant-Appellee.

No. 83–3208.

United States Court of Appeals, Fifth Circuit.

April 9, 1984.

---

Kim M. O'Dowd, New Orleans, La., for plaintiffs-appellants.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Raymond J. Salassi, Jr., Mitchell F. Crusto, New Orleans, La., for defendant-appellee.

Before REAVLEY, TATE and GAR-WOOD, Circuit Judges.

TATE, Circuit Judge:

The plaintiffs, Rose Marie O'Dowd[1] and George O'Dowd ("the O'Dowds"), brought suit under the Equal Credit Opportunity Act ("the Act"), 15 U.S.C. § 1691 *et seq.* (1976), against the defendant South Central Bell Telephone Company ("South Central") to recover damages resulting from alleged violations of the Act. The district court dismissed by summary judgment the O'Dowds' claim upon finding, inter alia, (1) that the O'Dowds, a white couple, had no cause of action under the Act because they did not fall into a legally-recognized minority protected by the Act, and (2) that, if entitled to notice of "adverse action" under the Act, the statement of the reasons therefor supplied by South Central was adequate to satisfy the statutory requirement. We affirm, agreeing with the district court as to the latter holding, and finding that, under the undisputed showing, no discrimination affecting the Act's protected classifications was implicated, whether or not a non-minority applicant has a cause of action under the Act.

---

1. Rose Marie O'Dowd, now deceased, has been replaced as party plaintiff in this action by George O'Dowd, executor of her estate.

*Context Facts*

George O'Dowd, a well-respected white [2] lawyer, and his wife had enjoyed residential telephone service supplied by South Central over twenty years previously. At the time this service was installed, no deposit was required by South Central. Through carelessness, O'Dowd was tardy in payment of his monthly telephone bill four times during the year preceding September 1980. The precipitating fact of this litigation arises out of South Central's notice to O'Dowd in September 1980 that, "due to [his] past payment record," a $100 deposit would be required and the telephone service disconnected if the deposit was not received in forty-five days. O'Dowd protested the demand, and South Central disconnected the service, whereupon he paid the deposit under protest and secured re-installation of his residential telephone service. (The deposit was subsequently refunded to him, with interest.)

The O'Dowds subsequently filed this action for damages, alleging two causes of action: I. The first cause of action was based upon a violation of the Act "in denying credit on the bases of race, sex, creed, and/or other invalid or discriminatory basis," 15 U.S.C. § 1691(a)(1),[3] arising out of South Central's treatment of customer-applicants in the allegedly predominately black population of their "366" area exchange; II. The second cause of action was based upon an additional violation by

2. We particularize race because of the claim of damage as a result of racial discrimination against blacks here alleged.

3. 15 U.S.C. § 1691 (1976) provides in pertinent part:
    (a) it shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
    (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); * * *

4. 15 U.S.C. § 1691(d)(2), (3) (1976) provides in part:
    (2) each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor.
    *    *    *    *    *    *

South Central of the Act's requirement that "[e]ach applicant [for credit] against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2) (1976).[4]

I. *The Discrimination Claim under Section 1691(a)(1)*

The O'Dowds do not claim that they themselves were discriminated against on the grounds of "race, color, religion, national origin, sex or marital status, or age," 15 U.S.C. § 1691(a)(1) (quoted at note 3 *supra*), but rather that they were damaged as a result of South Central's discriminatory policies against customer-applicants in the "366" exchange (which the O'Dowds, a white couple, allege to have a large number of black and elderly customer-applicants). This cause of action would depend, for its predicate, upon a showing that South Central did not enforce a similar deposit-requirement, when presented with tardiness in payment, with regard to other exchange areas that were predominately white or predominately inhabited by younger persons.

We need not face the issue posed by the O'Dowds, however—that, contrary to the district court holding, not only members of Act-protected classifications, but *also* other applicants for credit damaged as a result of discrimination against the protected classifications,[5] have a cause of action under the

(3) a statement of reasons meets the requirements of this section only if it contains specific reasons for the adverse action taken.

5. The O'Dowds argue: The legislative history of the 1976 amendments to the Act suggest that other anti-discrimination legislation may be looked to as a guide to interpretation of the Act. 1976 U.S.Code Cong. & Admin.News 403, 406. A cause of action under such an anti-discrimination statute was found in favor of one not a member of a protected class though directly affected by discrimination against members of such a class. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970). The O'Dowds urge that such a cause of action should be recognized under the Act as well, as was found in *Cherry v. Amoco Oil Co.,* 490 F.Supp. 1026, 1029–30 (N.D. Ga.1980). *See also* 12 C.F.R. § 202.2(Z), n. 3.

Act—because here, under the undisputed showing, South Central's request for a deposit was made pursuant to a standard policy applicable to all exchange areas serviced by it, and that, moreover, the exchange "366" area reflected a racially and sexually diverse "microcosm" reflecting South Central's entire customer population.

The district court granted South Central summary judgment on this claim. Initially, the party seeking summary judgment must demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law. *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). South Central presented various showings demonstrating that the basis for the deposit request to the O'Dowds was a pattern of lateness in payments (four times) during the previous twelve months. Presented by South Central for consideration on the motion for summary judgment were, inter alia, the affidavit of Beryle S. Ramsey,[6] a supervisor handling accounts in the "366" telephone exchange area, and the deposition of Shari Hinojosa,[7] the service representative who handled the request from the O'Dowds of the deposit. These factual submissions were sufficient to dem-

onstrate, unless controverted, that South Central's deposit request was based upon a non-discriminatory motive, *i.e.*, the O'Dowds' tardiness in payment of the telephone bill, and in accordance with a non-discriminatory general practice of requiring deposits in such instances.

Fed.R.Civ.P. 56(e) provides that, once motion for summary judgment is supported by affidavits and other evidence, "an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The O'Dowds' allegation that the deposit request was made on the basis of impermissible discrimination is refuted by the undisputed factual showing. The O'Dowds assert that South Central discriminates against "366" area applicants because the racial composition and age of the area's population indicate that residents in the area are a bad credit risk. When pressed for the factual basis of the allegation, however, O'Dowd was unable to identify his source.[8] Further, O'Dowd admitted to hav-

6. Beryle S. Ramsey's affidavit stated: South Central's procedures in following delinquent accounts caused its computers to issue written notices of overdue amounts when payment was not received by the due date shown on each bill. When an overdue notice was sent out, the computer was also programmed to consider the payment record of the customer-applicant over the previous twelve months. When certain computer-programmed criteria were met, the computer printed out a list of accounts that had been periodically overdue during the previous year, *without* regard to length of account, place of employment, credit-worthiness, race, color, religion, national origin, welfare status, sex, marital status, etc. Deposit requests were then sent out to customers with periodically overdue accounts thus determined, solely on the basis of a pattern of repeated tardiness. Four past due notices had been sent to the O'Dowds during the year before the notice; Shari Hinojosa, South Central's service representative, reviewed the computer record of O'Dowd's payment, found it to have a pattern of late payments during that period and sent a letter to O'Dowd requesting a $100 deposit, the customary practice for a periodically tardy account. Finally, Ramsey averred that the "366" exchange includes a racially

and sexually diverse microcosm of South Central's customer-applicant population.

7. The deposition of Shari Hinojosa provides corroboration in more detail. She stated, "The only time we request a deposit is if they don't pay their bills on time." She also indicated that the same procedures were followed whether the balance was carried over from one month to the next, or whether the balance was only two or three days late, being triggered by computer report.

8. Q: How do you know that it was based on the location of your residence?
A: The telephone people, employees told me that themselves.
Q: What employees?
A: I don't know who they are. A lot of Southern Bell Telephone Company employees would have told me that.
Q: Okay.
A: I don't know their names, but I bet you Southern Bell Telephone knows their names.
Q: I thought you told me you talked to no one about this incident at all.
A: Oh, no, I never told you that.

ing missed due dates in paying his telephone bills, and he admitted having received from South Central at least three "late" notices.

In short, the O'Dowds failed to produce any "specific facts," Fed.R.Civ.P. 56(e), to show there was a genuine factual issue with regard to South Central's undisputed showing of legitimate non-discriminatory reasons for the action taken, and that would tend to substantiate the O'Dowds' claims regarding the demography of the "366" area or the disparate treatment by South Central of customer-applicants in the area. Accordingly, the grant of summary judgment in favor of South Central was correct. *McKenzie v. U.S. Home Corp.,* 704 F.2d 778, 779 (5th Cir.1983); *White v. United Parcel Service,* 692 F.2d 1, 3 (5th Cir.1982).

II. *The Adequate-Explanation-Failure Cause of Action Under Section 1691(d)(3)*

■ The Act affords a cause of action for damages against any creditor "who fails to comply with *any* requirement" imposed by the Act. 15 U.S.C. § 1691e (emphasis added). The plaintiffs allege that they are entitled to damages for South Central's failure to comply with the requirements of 15 U.S.C. § 1691(d)(3).

For present purposes, without necessarily so deciding, we accept the O'Dowds' contentions

(a) that South Central's new requirement that the O'Dowds furnish a deposit for continued credit service, after twenty years of such service without deposit, was an "adverse action" within the statutory defi-

nition as "a change in the terms of an existing credit arrangement," 15 U.S.C. § 1691(d)(6), which thus entitled them to a "statement of reasons" for such adverse action, § 1691(d)(2), (quoted at note 4 *supra*), that would contain "the specific reasons for the adverse action taken," § 1691(d)(3), (quoted at note 4 *supra*), and

(b) that § 1691(d), which was added to the Act by a 1976 amendment, required a creditor to notify *any* "credit applicant"[9] of an adverse action and of the "specific reasons" therefor, § 1691(d)(2), (3)—not just those within the classifications of race, gender, etc. protected against credit discrimination by the Act. *See, e.g., Fischl v. General Motors Acceptance Corporation,* 708 F.2d 143 (5th Cir.1983) (apparently accepting, without discussion, this construction of the Act).

As previously noted, pursuant to a standard policy, South Central sent a notice of its adverse action (*i.e.,* requiring a deposit for continuation of credit), explaining the reason as "due to your [O'Dowd's] past payment record." The O'Dowds claim that this notice did not meet the statutory requirement that the notice contain "the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3).

Before summarizing the present facts with more specificity, in the light of which we hold that the adverse-action notice *did* meet the statutory requirement, it is appropriate that, first, we advert to the statutory purposes designed to be served by this notice requirement. As explained in the Senate Report accompanying the 1976 notice-provision, which originated in the Sen-

Q: Sir?
A: I talked to a lot of people about the fact that they cut my phone off.
Q: At South Central Bell you discussed it?
A: Not at South Central Bell.
Q: I don't understand your previous answer.
A: Customers of South Central Bell Telephone.
Q: In other words, nobody at South Central Bell Telephone ever told you or indicated to you that the location of your residence had anything to do with the reason the deposit was requested?

A: I don't recall that. I don't recall right now, no.
Q: Is it possible that you did talk to someone at South Central Bell about the basis for it?
A: Possibly.
Q: But you have no way of telling me who it is?
A: No.

**9.** The term includes the "continuation of credit" to one who has received an extension of credit. 15 U.S.C. § 1691a(b); 12 C.F.R. § 202.2(e).

ate and was added to the Act by the 1976 amendment:

> The requirement that creditors give reasons for adverse action is, in the Committee's view, a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already overextended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

S.Rep. No. 589, 94th Cong., 2d Sess. 4 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 403, 406. The notice provision was thought to have a long-term "beneficial educational effect on the credit-consuming public and a beneficial competitive effect on the credit marketplace." *Id.* at 409 (S.Rep. at 7).

The Senate Report concluded that it was not intended that "statements of reasons be given in the form of long, detailed personal letters, and that "a short, check-list statement will be sufficient so long as it reasonably indicates the reasons for adverse action." *Id.* at 410 (S.Rep. at 8). The report included a sample check-list letter regarded as sufficient, indicating that the reasons would be sufficiently stated by such notations as "length of employment," "lack of credit references," "time in residence," "too many other credit obligations at this time," etc. *Id.* at 410–11 (S.Rep. at 9).[10] Consonantly with the legislative intent, the administrative regulation promulgated as authorized by the Act provided that the "statement of reasons for adverse action shall be sufficient if it is specific and indicates the principal reason(s)" for the action; the regulation furnished a form check-list that, if properly completed, would satisfy the Act's requirements, which includes such short-form summaries as "[d]elinquent credit obligations," "[i]nsufficient credit file," "[l]ength of employment," etc., 12 C.F.R. § 202.9(b)(2).

Reverting to the present facts, in a letter of September 30, 1980, O'Dowd was informed by South Central that a deposit of $100 was requested "due to your past payment record" and that, if the deposit was not received by October 22, 1980, O'Dowd's telephone would be disconnected. As previously described, this letter was triggered by computer printout because O'Dowd's current telephone bill was overdue (by a day or so) and because, three times during the preceding year (October 1979, November 1979, and December 1979) the bill had been similarly overdue, resulting in each instance in a past-due notice that unless the rather nominal amounts owed were paid within a week, telephone service would be interrupted. (In each instance, O'Dowd promptly paid the overdue amounts, without further incident.)

Under these circumstances, O'Dowd was clearly informed, in our opinion, of the "specific reasons for the adverse action taken," as required by 15 U.S.C.

---

10. As the Senate Report shows, *Id.* at 410 (S.Rep. at 8), the bill as proposed in the Senate required the creditor's statement of reasons to give a "concise indication" of the applicant's deficiencies. The Conference committee explanation shows that the House bill contained no equivalent provision and that the conference report adopted the Senate provision, with two modifications, one exempting small creditors from the requirement to give *written* notice, and the other to change the requirement of the statement of reasons so as to provide that it contain the "specific reasons for the adverse action taken," the enacted language of 15 U.S.C. § 1691(d)(3). H.Conf.Rep. No. 94–873, 94th Cong.2d Sess. 8 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin.News 427, 428.

§ 1691(d)(3). Within the meaning of the applicable administrative regulation, it was "specific and indicate[d] the principal reason(s) for the adverse action," 12 C.F.R. § 202.9(b)(2), and it met the statutory purpose of informing the creditee of "where and how [his] credit status is deficient," S.Rep. No. 589, *supra*, at 4, U.S.Code Cong. & Admin.News 1976, at 406.

The present situation is thus distinguishable from that in *Fischl v. General Motors Acceptance Corporation*, 708 F.2d 143 (5th Cir.1983). There, a young homeowner with (actually) an A–1 credit rating, was denied financing on a new-car purchase with the check-listed reason, "credit references are insufficient," and with a check-list indication that no outside sources of information had been used. Actually, however, a credit-bureau report had been consulted, on which there was a mistaken although non-derogatory indication as to one account, and on which the applicant's present employment at $4,000 per month was not shown. In holding the statement of reasons insufficient in that instance, we pointed out that the creditor's statement of reasons inaccurately implied "some qualitative deficiency in Fishl's credit status" and that it did not "signal the nature of that deficiency and, since the name and address of the credit bureau was not supplied, did not provide the [statute-] mandated opportunity for the applicant to correct erroneous information." 708 F.2d at 147.

Here, unlike in *Fischl*, the reason was *not* "misleading or at best excessively vague," and the O'Dowds were *not* " 'left to speculate' " as to the reasons for the adverse action here given, which stated reasons were *not* "misleading" but instead *did* "coincide with those in fact relied upon" by the creditor. *Fischl, supra*, 708 F.2d at 148. The holding and rationale in *Fischl* are thus consistent with ours in the instant decision.

*Conclusion*

Accordingly, we AFFIRM the district court's judgment summarily dismissing the O'Dowds' claims against South Central.

AFFIRMED.