630 F.Supp. 722 (1986)
Sara HIGGINS, Plaintiff,
v.
J.C. PENNEY, INC., a Delaware Corporation, Defendant.
No. 85-1207C(5).
United States District Court, E.D. Missouri.
February 21, 1986.
*723 Jay E. Sushelsky, St. Louis, Mo., for plaintiff.
Evans & Dixon, Kevin G. Kennedy, St. Louis, Mo., Joseph C. Kaplan, New York City, for defendant.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This cause is before the Court on the parties' cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. The parties agree there is no genuine issue of material fact and consequently, the sole task for the Court is the application of the relevant law.
Plaintiff Sara Higgins brings this suit under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 202.9. She challenges the manner in which defendant J.C. Penney, Inc. (Penney) informed her of its decision to deny her credit card application. Penney contends that it satisfied the requirements of the ECOA.

Facts
In September, 1984, Sara Higgins applied for a J.C. Penney credit card. By way of a letter dated September 28, 1984, Penney notified plaintiff that it had denied her application and told her she could receive specific reasons for the denial by contacting its office. The company also told her it based its decision, in part, on the report of a credit agency, Credit Information Corp. of St. Louis. On October 8, 1984, plaintiff requested a more detailed explanation from Penney and, in response, defendant sent her a letter dated October 17, 1984. In this second letter, Penney stated that it denied the plaintiff's application because her score under the company's credit rating system was too low. The letter further stated that while no factor alone was dispositive, the factors that most significantly affected her score were "credit bureau/delinquent history," "type of bank accounts," and "type of credit references." On October 23, 1984, and November 5, 1984, plaintiff wrote Penney seeking additional information about the company's denial of her application. Defendant replied to each of these letters with identical form letters which added little to its earlier explanation.

Legal Analysis
In passing the Equal Credit Opportunity Act, Congress addressed what it viewed as inequities in the consumer credit system. It also included in the legislation a provision designed to make the credit application process more open by requiring creditors to provide to applicants specific reasons for any adverse actions taken. This portion of the legislation has an important educational purpose.
The requirement that creditors give reasons for adverse action is, in the Committee's view, a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should *724 benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.
S.Rep. No. 94-589, 94th Cong. 2d Sess., reprinted in 1976 U.S.Code Cong. & Admin.News, p. 406.
The reasons given by Penney, viewed in the abstract, are arguably not informative enough to satisfy Congressional intent. But, Congress, in passing the ECOA, directed the Federal Reserve Board to issue regulations implementing and refining the statutory language, 15 U.S.C. § 1691b(a). The Federal Reserve compiled a list of hypothetical reasons that in most cases would satisfy the specificity requirement of the Act's notice provisions,[1] and also established some written guidelines for interpretation of the Act. Although it is a close question, the Court finds the reasons given by Penney satisfy the statutory requirement of specificity as interpreted in accordance with the Federal Reserve regulations. In the absence of these regulations, to which the Court must give deference, Co-operative Power Association v. F.E.R.C., 733 F.2d 577, 580 (8th Cir.1984); the Court would probably find that Penney violated the ECOA notice provisions.
The first reason given for the application denial was "credit bureau report/delinquent history." Plaintiff's correspondence with Penney does not bear out her allegation that this reason is not specific enough to satisfy the policies underlying the ECOA. In her letters of October 23, 1984, and November 5, 1984, Higgins contested Penney's assertion that she had a history of delinquent credit payments. The language and tenor of the letters suggests the reason given by Penney enabled the plaintiff to focus her efforts in a particular area and to investigate the propriety of the company's decision. In addition, "credit bureau/delinquent history" resembles in substance the reason "due to past payment record," which the Fifth Circuit found sufficient in O'Dowd v. South Cent. Bell, 729 F.2d 347, 351-53 (5th Cir.1984).
The second and third reasons given by Penney, "type of bank accounts" and "type of credit references," are less obviously sufficient. Plaintiff contends that Penney could not reasonably expect her to know that the company's credit rating system considers applicants with checking accounts better credit risks than applicants with just savings accounts. In support of this contention, plaintiff cites Cherry v. Amoco Oil Co., 481 F.Supp. 727 (N.D.Ga. 1979), where the Federal District Court for the Northern Division of Georgia held that the reason "type of bank references" did not meet the ECOA's specificity requirements. The Court finds the decision in Cherry not helpful here because it contains no analysis or discussion of the specificity requirement. Id. at 729-30.
Similarly, the plaintiff contends that the reason "type of credit reference" did not adequately inform her that her credit application score was low because she did not *725 have a major bank card or gas card. The decision of the Fifth Circuit in Fischl v. General Motors Acceptance Corp., 708 F.2d 143 (5th Cir.1983) supports plaintiff's contentions. The Court in Fischl found that the reason actually given there, "credit references are insufficient," differed from one of the reasons included in the Federal Reserve's list of approved reasons "insufficient credit references." As a consequence, the Court in Fischl held that the creditor there could not escape liability by pointing to the similarity between the reason it gave and that authorized in the operative regulations. Id. at 147. The Court will not follow the Fifth Circuit's approach since it requires rigid, exact quotation of the reasons listed in the regulation.
The Court will decline to follow Fischl for another reason. The Fifth Circuit in that case found not only that the reason proffered by the potential creditor differed from an item on the regulation's list of acceptable reasons, but also that
Use of such generic descriptive terms as "insufficient credit references" or "insufficient credit file" are not sanctioned by these governmental entities absent an explanation by the creditor of the manner in which the credit reference or file was insufficient.
Id. at 148. Here, the Fifth Circuit's opinion directly contradicts the Federal Reserve regulations, which state, in part
In providing reasons for adverse action, creditors need not describe how or why a factor adversely affected an applicant. For example, the notice may say "length of residence" rather than "too short a period of residence."
12 C.F.R. § 202.1101. The Court cannot follow the Fifth Circuit's approach in Fischl since it does not evidence sufficient deference to agency regulatory expertise required in this Circuit. Cooperative Power Association, 733 F.2d at 580.
The second and third reasons provided to plaintiff by Penney resemble, in their degree of specificity, those included in the exemplary list of reasons in the Federal Reserve regulations. While Penney's response required some degree of deductive reasoning by plaintiff, the Board's interpretive regulation states that this is not impermissible. These regulations represent the Federal Reserve Board's view as to the amount of specificity necessary to comply with the statute. While the reasons given by plaintiff might have required her to exert more investigative effort than some might think is appropriate, the Court cannot say that application of the regulations here frustrates the policies underlying the ECOA.
Plaintiff obviously knew she had only a savings account. The reason given by Penney, "type of bank account," when considered within the context of this knowledge, directed plaintiff to the appropriate area of inquiry. Further, plaintiff knew she did not have the type of credit experience other applicants might have. She should have reasonably suspected, after receiving Penney's second letter, that a creditor would look with disfavor on her relatively unsophisticated financial background.
This was not a frivolous lawsuit. Penney could have easily provided plaintiff with more detailed and explanatory information, and should consider varying its practices. The Court finds, though, on a close question, that the reasons given by Penney for denying plaintiff's credit card application did not violate the specificity requirement of 15 U.S.C. § 1691(d).
Accordingly,
IT IS HEREBY ORDERED that the plaintiff's motion for summary judgment is DENIED and the defendant's motion for summary judgment is SUSTAINED.
IT IS FURTHER ORDERED that judgment is entered in favor of defendant and against the plaintiff, with both parties to bear their costs of suit.
NOTES
[1] Principal Reason(s) For Adverse Action Concerning Credit

___ Credit application incomplete
___ Insufficient credit references
___ Unable to verify credit references
___ Temporary or irregular employment
___ Unable to verify employment
___ Length of employment
___ Insufficient income
___ Excessive obligations
___ Unable to verify income
___ Inadequate collateral
___ We do not grant credit to any applicant on the terms and conditions you request
___ Too short a period of residence
___ Temporary residence
___ Unable to verify residence
___ No credit file
___ Insufficient credit file
___ Delinquent credit obligations
___ Garnishment, attachment, foreclosure, repossession or suit
___ Bankruptcy
___ Other specify: ______
12 C.F.R. § 202.9(2) at p. 27.