William Douglas THOMPSON, III, Plaintiff-Appellee,

v.

SAN ANTONIO RETAIL MERCHANTS ASSOCIATION, Defendant-Appellant.

No. 81–1506
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1982.

LeLaurin, Adams, Eichelbaum & Sanders, Louis LeLaurin, III, San Antonio, Tex., for defendant-appellant.

John W. Benbow, San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON and GARWOOD, Circuit Judges.

PER CURIAM:

This case involves the liability of the San Antonio Retail Merchants Association (SARMA) for an inaccurate credit report. Gulf Oil Corporation (Gulf) and Montgomery Ward (Ward's) denied credit to William Douglas Thompson, III, on the basis of erroneous credit information furnished by SAR-

MA. The district court, after a nonjury trial, entered judgment for Thompson in the sum of $10,000 actual damages and $4,485 attorneys' fees. SARMA appeals.

I. *Background*

SARMA provides a computerized credit reporting service to local business subscribers. This service depends heavily upon credit history information fed into SARMA's files by subscribers. A key mechanism used by SARMA to update its files is a computerized "automatic capturing" feature. A subscriber must feed certain identifying information from its own computer terminal into SARMA's central computer in order to gain access to the credit history of a particular consumer. When presented with this identifying information, SARMA's computer searches its records and displays on the subscriber's terminal the credit history file that most nearly matches the consumer. The decision whether to accept a given file as being that of a particular consumer is left completely to the terminal operator.[1] When a subscriber does accept a given file as pertaining to a particular consumer, however, the computer automatically captures into the file any information input from the subscriber's terminal that the central file did not already have.

The disadvantage of an automatic capturing feature is that it may accept erroneous information fed in by subscribers, unless special auditing procedures are built into the system. In the instant case, SARMA failed to check the accuracy of a social security number obtained by its automatic capturing feature. The social security number is the single most important identifying factor for credit-reference purposes. As a result, the computer erroneously began to report the bad credit history of "William Daniel Thompson, Jr.," to subscribers inquiring about "William Douglas Thompson, III."

In November 1974, William Daniel Thompson, Jr., opened a credit account with Gordon's Jewelers (Gordon's) in San Antonio, listing his social security number as 457–68–5778, his address as 132 Baxter, his occupation as truck loader, and his marital status as single. He subsequently ran up a delinquent account of $77.25 at Gordon's that was ultimately charged off as a bad debt. When Gordon's voluntarily reported the bad debt, SARMA placed the information and a derogatory credit rating into file number 5867114, without any identifying social security number.

In early 1978, the plaintiff, William Douglas Thompson, III, applied for credit with Gulf and with Ward's in San Antonio. He listed his social security as 407–86–4065, his address as 6929 Timbercreek, his occupation as grounds keeper, and his wife as Deborah C. On February 9, 1978, Gulf's terminal operator mistakenly accepted file number 5867114 as that of the plaintiff. SARMA's computer thereupon automatically captured various information about William Douglas Thompson, III, including his social security number, into file number 5867114. At that point, the original file, which was on William Daniel Thompson, Jr., became a potpourri of information on both the plaintiff and the original William Daniel Thompson, Jr. The name on the file remained that of William Daniel Thompson, Jr. The social security number became that of the plaintiff, the current address and employer became that of the plaintiff, a former address and employer became that of William Daniel Thompson, Jr., and the wife's name became that of the plaintiff's wife.

Shortly thereafter, Ward's terminal operator ran a credit check on the plaintiff, was given the garbled data, and accepted file number 5867114 as that of the plaintiff. As a result of the adverse information regarding the Gordon's account, Ward's denied the plaintiff credit. The plaintiff applied for credit at Ward's in May 1979 and was again rejected.

---

1. The terminal operator has the option of accepting the file as that of the consumer or of requesting the computer to supply the file of the next most likely match. The terminal operator's decision can be made without any minimum number of "points of correspondence" between the subject of inquiry and the relevant credit file.

On February 21, 1978, Gulf requested a "revision" of file number 5867114, a procedure which entails a rechecking of information in a file with respect to a particular creditor or creditors. Following its usual procedures, SARMA would call Gordon's to verify in detail the information in the file. Although this was probably done, whoever contacted Gordon's apparently failed to check the social security number of Gordon's delinquent customer and take corrective action when it was received. Instead, the adverse information remained in the file under the plaintiff's social security number after Gulf's revision request, and Gulf denied the plaintiff credit.

The adverse information remained in the plaintiff's file during 1978 and the first five and a half months of 1979. During all of this time the plaintiff thought he had been denied credit from Ward's and Gulf because of a 1976 Texas felony conviction for burglary. He had received a five-year probationary sentence,[2] but subsequently gained fulltime employment and straightened out his life. In June of 1979, plaintiff's wife learned from her credit union in processing an application for a loan that her husband's adverse credit rating resulted from a bad debt at Gordon's. The plaintiff knew he had never had an account at Gordon's so he and his wife went directly to their place of business. After waiting some two hours he was informed that there had indeed been a mistake, their credit record was for William Daniel Thompson, Jr.

The plaintiff and his wife went to SARMA with this information in an attempt to purge the erroneous credit information. They spoke with an individual and showed birth registration and drivers license information revealing his name to be William Douglas Thompson III. The entire process required some three hours. Nevertheless SARMA thereafter mailed appellee a letter addressed to William Daniel Thompson III. Appellee's wife again returned to SARMA. Following this SARMA once again addressed appellee in another letter as William Daniel Thompson III. Appellee again returned to SARMA—yet again SARMA wrote still another letter with the same incorrect name. Further, though SARMA's policy was to send corrections made on a file to any subscribers who had made inquiry about it within the last six months, SARMA failed to notify Ward's of the corrections. The plaintiff filed an action in state court on October 4, 1979. It was not until October 16, 1979, that SARMA informed Ward's of the erroneous credit information.[3] On November 5, 1979, the action was removed to the federal district court. After a bench trial, the district court found that denials of credit to the appellee by Gulf and Ward's were caused by SARMA's failure to follow reasonable procedures to assure the maximum possible accuracy of its files. The district court awarded plaintiff actual damages in the sum of $10,000 plus attorneys' fees in the sum of $4485.

## II. The Liability Issue

Under 15 U.S.C. § 1681o of the Fair Credit Reporting Act (Act), a "consumer reporting agency" is liable to "any consumer" for negligent failure to comply with "any requirement imposed" by the Act.[4] In the instant case, the district court deter-

---

**2.** Appellee was placed on probation and after successfully fulfilling the conditions thereof for over one-half of the probationary period of five years, was permitted to withdraw his plea of guilty, the indictment was dismissed, and the judgment of conviction was set aside.

**3.** Ward's reprocessed the plaintiff's application for credit, but under new guidelines denied Thompson credit on the basis of a "preliminary score" that did not take into account any information in SARMA's computer file.

**4.** 15 U.S.C. § 1681o provides:

> Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1) any actual damages sustained by the consumer as a result of the failure;
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

mined that SARMA was liable under section 1681o for negligent failure to comply with section 1681e(b) of the Act, which provides:

> When a consumer reporting agency *prepares* a consumer report, it shall follow *reasonable procedures* to assure *maximum possible accuracy* of information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b) (emphasis added).

 Section 1681e(b) does not impose strict liability for any inaccurate credit report, but only a duty of reasonable care in preparation of the report. That duty extends to updating procedures, because "preparation" of a consumer report should be viewed as a continuing process and the obligation to insure accuracy arises with every addition of information. *Lowry v. Credit Bureau, Inc. of Georgia*, 444 F.Supp. 541, 544 (N.D.Ga.1978). The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances. *Bryant v. TRW, Inc.*, 487 F.Supp. 1234, 1242 (E.D.Mich. 1980).

██ Applying the reasonable-person standard, the district court found two acts of negligence in SARMA's updating procedures. First, SARMA failed to exercise reasonable care in programming its computer to automatically capture information into a file without requiring any minimum number of "points of correspondence" between the consumer and the file or having an adequate auditing procedure to foster accuracy. Second, SARMA failed to employ reasonable procedures designed to learn the disparity in social security numbers for the two Thompsons when it revised file number 5867114 at Gulf's request. This Court can reverse the district court on these findings of fact only if there is a definite and firm conviction that the judgment of the district court is clearly erroneous.

*United States v. Gypsum Co.*, 333 U.S. 364, 394–395, 68 S.Ct. 525, 541–542, 92 L.Ed. 746 (1948); *Ferrero v. United States*, 603 F.2d 510, 512 (5th Cir. 1979).

With respect to the first act of negligence, George Zepeda, SARMA's manager, testified that SARMA's computer had no minimum number of points of correspondence to be satisfied before an inquiring subscriber could accept credit information. Moreover, SARMA had no way of knowing if the information supplied by the subscriber was correct. Although SARMA did conduct spot audits to verify social security numbers, it did not audit all subscribers. With respect to the second act of negligence, SARMA's verification process failed to uncover the erroneous social security number even though Gulf made a specific request for a "revision" to check the adverse credit history ascribed to the plaintiff. SARMA's manager, Mr. Zepeda, testified that what should have been done upon the request for a revision, was to pick up the phone and check with Gordon's and learn, among other things, the social security number for William Daniel Thompson, Jr. It was the manager's further testimony that the social security number is the single most important information in a consumer's credit file. In light of this evidence, this Court cannot conclude that the district court was clearly erroneous in finding negligent violation of section 1681e(b).[5] *See Colletti v. Credit Bureau Services, Inc.*, 644 F.2d 1148, 1158 (5th Cir. 1981); *Bryant*, 487 F.Supp. at 1241.

### III. *Award of Damages*

 The district court's award of $10,-000 in actual damages was based on humiliation and mental distress to the plaintiff. Even when there are no out-of-pocket expenses, humiliation and mental distress do constitute recoverable elements of damage under the Act. *Millstone*, 528 F.2d at 834–35; *Bryant*, 487 F.Supp. at 1239–40; *Collins v. Retail Credit Co.*, 410 F.Supp. 924, 932

---

**5.** Other courts have held that failure to take reasonable action to verify adverse information is a violation of § 1681e. *See Millstone v. O'Hanlon Reports, Inc.*, 383 F.Supp. 269 (E.D.

Mo.1974), *aff'd*, 528 F.2d 829 (8th Cir. 1976); *Miller v. Credit Bureau, Inc.* [1969–73 Transfer Binder] Cons.Cred.Guide (CCH ¶ 99,173 D.C. Superior Court 1973). *See also Lowry, supra.*

(E.D.Mich.1976). *See also Evers v. Equifax, Inc.*, 650 F.2d 793 (5th Cir. 1981). In the instant case, the amount of damages is a question of fact which may be reversed by this Court only if the district court's findings are clearly erroneous. Fed.R.Civ.P. 52(a); *Neal v. Saga Shipping Co., S.A.*, 407 F.2d 481, 487–88 (5th Cir. 1969).

█ SARMA asserts that Thompson failed to prove any actual damages, or at best proved only minimal damages for humiliation and mental distress. There was evidence, however, that Thompson suffered humiliation and embarassment from being denied credit on three occasions. Thompson testified that the denial of credit hurt him deeply because of his mistaken belief that it resulted from his felony conviction:

> I was trying to build myself back up, trying to set myself up, get back on my feet again. I was working sixty hours a week and sometimes seventy. I went back to school. I was going to school at night three nights a week, four nights a week, three hours a night, and [denial of credit] really hurt. It made me disgusted with myself.
>
> . . . . [I needed credit to] be able to obtain things that everybody else is able to obtain, to be able to buy clothes or set myself up where I can show my ability to be trusted.
>
> We didn't even have a bed. It was pretty bad. We were hurting. Everything we had to do, we had to save up and pay cash for strictly. It was just impossible to do it any other way.

Further, the inaccurate information remained in SARMA's files for almost one and one-half years after the inaccurate information was inserted. Even after the error was discovered, Thompson spent months pressing SARMA to correct its mistakes and fully succeeded only after bringing a lawsuit against SARMA. This Court is of the opinion that the trial judge was entitled to conclude that the humiliation and mental distress were not minimal but substantial.

SARMA contends that the instant damage award is excessive when compared to similar cases such as *Millstone*, 528 F.2d at 834–35 and *Bryant*, 487 F.Supp. at 1239–40. In *Millstone*, an insurance company cancelled an automobile insurance policy after a consumer credit report alleged the insured was a political activist disliked by his neighbors. The insurer first cancelled the insured's policy and then reinstated it when an agent discovered the insured was in fact a highly respected assistant managing editor of the *St. Louis Post Dispatch.* Even though the incorrect report involved a mere $68.00 insurance policy, the district court awarded $2500 in actual damages for Millstone's mental anguish over the report. In *Bryant*, an inaccurate credit report was issued on a consumer in connection with a mortgage application for a house purchase. The credit report resulted in denial of the mortgage. The consumer called the inaccuracy to the attention of the credit reporting agency, yet the same inaccurate information was issued in connection with a later mortgage application. A jury determination of $8,000 in actual damages was sustained in that instance. *Bryant*, 487 F.Supp. at 1242–43. The damage award in the instant case is not so out of line with *Bryant* and *Millstone* as to be clearly erroneous. The case *sub judice* was a trial before the court without a jury. The trial judge was in a position to weigh the credibility of testimony on humiliation and mental distress and, therefore, should be given considerable latitude; it cannot be said that his determination was clearly erroneous.

█ SARMA finally asserts that Thompson was required to mitigate his damages by first exhausting alternative remedies. SARMA cites section 1681i of the Act which sets forth a procedure for consumers to challenge the completeness or accuracy of any disputed information in this file.[6] The Act, however, does not require that a consumer pursue the remedies provided in section 1681i before bringing suit under section

---

**6.** Both Gulf and Ward's notified the plaintiff of his right to make a written request from the consumer reporting agency of the reasons for the adverse action.

1681o for violation of section 1681e. If a consumer can prove a violation of section 1681e, he can sue directly on that basis without first exhausting alternative remedies. *McPhee v. Chilton Corp.*, 468 F.Supp. 494, 498 n.7 (D.Conn.1978). Thompson was not required to mitigate his damages by formally disputing the accuracy of information contained in his file.

## IV. *Award of Attorneys' Fees*

Section 1681o also allows an award of attorneys' fees.[7] The district court may determine the amount of attorneys' fees on the basis of the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[8] The district court explicitly applied the *Johnson* criteria and awarded $4485 in attorneys' fees based on 41.5 hours of work at $90 per hour and other special fees. The determination of a reasonable attorneys' fee is a matter within the discretion of the trial judge and should not be set aside absent clear abuse of discretion. *King v. McCord*, 621 F.2d 205 (5th Cir. 1980); *Cantu v. United States*, 598 F.2d 471 (5th Cir. 1979); *Norwood v. Harrison*, 581 F.2d 518 (5th Cir. 1978); *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977). This Court cannot say that the district court clearly abused its discretion.

The judgment of the district court is AFFIRMED.

---

**7.** *See* footnote 4, *supra.*

**8.** *Johnson* requires that attorneys' fees be calculated by taking account the following factors (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.