**Thomas BATDORF, Plaintiff,**

v.

**EQUIFAX, et al., Defendants.**

Civ. No. 95–00815 ACK.

United States District Court,
D. Hawaii.

Dec. 9, 1996.

---

Thomas Batdorf, pro se.

Robert Carson Godbey, Gilbert Jackson & Godbey, Honolulu, HI, for Equifax Inc., defendant.

William L. Goo, Suzuki & Goo, Honolulu, HI, for Credit Bureau of the Pacific Incorporated, defendant.

Linda N. Monden, Glenn M. Kosaka, Wailuku, HI, for Kula Federal Credit Union, defendant, cross-claimant.

Keith D. Kirschbraun, Wright & Kirschbraun, Wailuku, Maui, HI, for TRW Inc., defendant.

## ORDER GRANTING TRW'S MOTION FOR SUMMARY JUDGEMENT

KAY, Chief Judge.

### PROCEDURAL BACKGROUND

On October 4, 1995 plaintiff Thomas Batdorf ("Plaintiff") filed a complaint against defendants Equifax, Inc., the Credit Bureau of the Pacific ("CBP"), the Kula Consumer Federal Credit Union ("KCFCU") and TRW, Inc. The complaint alleges various violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

On September 17, 1996 the Court issued an order denying in part and granting in part a motion by Defendant TRW for summary judgement. In that order the Court gave TRW leave to file a successive motion for summary judgement, which TRW has now done. In the instant motion, TRW seeks summary judgement on all remaining issues which were unresolved in the prior order.

In opposition to this motion Plaintiff has filed a "Concise Statement," to which TRW filed a Reply. In addition, immediately prior to the hearing Plaintiff filed a supplemental affidavit in opposition to this motion. This matter came before the Court for hearing on December 2, 1996.

### FACTS

The facts have been fully set forth in the Court's prior order on TRW's first motion for summary judgement. *See* Order filed September 17, 1996.

## STANDARD OF REVIEW

Summary judgement shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgement procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgement must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, " '*specific facts* showing that there is a genuine issue for trial.' " *Id.* (quoting Fed. R.Civ.P. 56(e)) (emphasis in original). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgement. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The standard for a grant of summary judgement reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing, *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

## DISCUSSION

### I. Negligent Reporting to KCFCU

█ Plaintiff's TRW credit report indicates that KCFCU obtained a copy of Plaintiff's credit information. Plaintiff contends that he has never sought employment from or done business with KCFCU, and therefore KCFCU accessed his report for an improper purpose. In turn Plaintiff claims that TRW is negligent for not instituting reasonable procedures to ensure that his credit report was not accessed by KCFCU for an improper purpose.

In the prior order the Court found that TRW was not entitled to summary judgement on this issue because it had not shown that it used reasonable safeguards to ensure that subscribers do not use TRW credit reports for improper purposes. In TRW's mo-

tion before the Court at that time, TRW relied solely on the fact that it requires subscribers (including KCFCU) to sign subscription agreements in which they attest they will only use the reports for proper purposes. The Court rejected this argument. In doing so the Court relied on a Fifth Circuit case which held that a consumer credit reporting agency was negligent for transmitting credit information to a subscriber without maintaining sufficient procedures to ensure that the information was not improperly transmitted to the subscriber. *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir.1982). *Thompson* suggests that before a credit reporting agency transmits credit information to subscribers, the agency must require a certain "minimum number of points of correspondence" and/or otherwise ensure that the social security number of the consumer whose credit data is sought corresponds to the social security number of the consumer whose credit data is in fact retrieved. *Id.*

In the instant motion TRW does not solely rely on the subscription agreement with KCFCU. To the contrary, TRW explains the numerous procedures it uses to ensure that subscribers access the correct consumer report and do so only for proper purposes. First, prior to initially accepting a subscriber, TRW conducts a study of the potential subscriber's need for credit reports. *See* Affidavit of David Browne. For example, before TRW accepted KCFCU as a subscriber it determined that KCFCU is a credit union which regularly extends credit to consumers and thus it has a need for credit information. Second, after conducting this investigation, TRW requires its subscribers to sign a subscription agreement. Although the Court found in the prior Order that the subscription agreement is alone insufficient to prevail on a motion for summary judgement, as discussed above, here TRW has shown that the agreement is just one facet of TRW's overall program to prevent subscribers from using its credit reports for improper uses. In the subscription agreement signed by KCFCU, KCFCU attests it will only use TRW's credit reports for proper purposes as defined in the Act.

TRW not only screens subscribers in this general way, but it also monitors subscribers' requests for particular credit reports. For example as a third precaution, TRW assigns passwords to each subscriber and an "extensive series of subcodes" to individual users within the subscribing company. For instance TRW has assigned a password to KCFCU as an entity and individual passwords to KCFCU employees who need access to credit reports. Not everyone at KCFCU has a password. *See* TRW Exhibit 2 (Declaration of Elmer Cravalho). Without these passwords and codes, KCFCU may not access TRW's credit files.

Fourth, to obtain a credit report on a particular consumer the subscriber must identify itself and the specific purpose for seeking the information. In the case at bar, for example, when KCFCU allegedly obtained Plaintiff's credit report from TRW's computer files, whoever from KCFCU requested the information denoted that KCFCU sought Plaintiff's credit information for a code "19" purpose—use for a FHA real estate mortgage. This is a business purpose which is proper under the Act.

Fifth, to obtain credit information "online" via computer (as KCFCU purportedly did in this case), the subscriber must also type in the consumer's social security number, first and last name, "non-conflicting" middle name or initial, and address. Subscribers can retrieve the information even if the last name is accidentally misspelled, which often happens inadvertently, but other identifiers—including the social security number—must correspond. In this case KCFCU apparently entered in the last name of "Batdosf" rather than "Batdorf," but apparently KCFCU was able to access Plaintiff's credit report because it accurately identified Plaintiff's social security number.

The Court finds that these steps taken by TRW were adequate precautions to protect against subscribers accessing Plaintiff's credit report for improper purposes. Although Plaintiff argues that KCFCU accessed his report for an improper purpose because he never applied for a FHA loan, TRW satisfied its duty by taking reasonable precautions to ensure KCFCU would not obtain the report

for an improper purpose. The Court finds TRW was not negligent under the Act for failing to prevent KCFCU's alleged improper access of Plaintiff's credit report. The Court hence grants TRW summary judgement on this issue.

## II. *Failure to Adequately Reinvestigate the ITT Account*

■ Plaintiff's second remaining claim against TRW is that TRW failed to adequately reinvestigate the adverse credit information regarding an "ITT" loan which TRW reported on Plaintiff's credit report. In the prior Order, the Court found that material issues of fact remained as to whether TRW had reasonably reinvestigated the ITT debt. *See* Order at p. 22. The Court found that merely sending ITT a "Consumer Dispute Verification" on which ITT checked off a box marked "verified" was insufficient to grant TRW summary judgement on the issue that it had reasonably reinvestigated the debt. *Id.* In the instant motion TRW has brought forth evidence that the ITT entry was reported accurately and, in any event, Plaintiff did not suffer damages because the ITT debt played no part in the decision by Sears to deny Plaintiff credit.

First, TRW has shown that the ITT debt was accurate. In a complimentary credit report sent to Plaintiff, TRW reported the following information about the ITT account:

> AS OF 08/88 THIS ACCOUNT IS SERIOUSLY PAST DUE AND WRITTEN OFF AS UNCOLLECTIBLE. YOUR BALANCE AS OF 05/08/93 IS $2,357 PAST DUE. THE LAST PAYMENT REPORTED TO TRW WAS MADE ON 04/24/93.

ITT's successor has shown proof that this entry was correct. *See* Affidavit of Yvonne LeMire. Plaintiff received a cash advance of $2,021.55 from ITT on April 7, 1987, but Plaintiff did not make any payments on this loan.[1] TRW has produced a copy of the canceled check in this amount, with Plaintiff's signature on the back of the check.

Given that the ITT entry was thus accurate, TRW cannot be liable for failing to adequately reinvestigate the debt because reinvestigation would have led to the same information having been reported. *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir.1991). For example in *Cahlin* the Eleventh Circuit denied the plaintiff's claim of inadequate reinvestigation of a disputed debt because the credit agency had accurately reported the debt. *Id.* As that court stated, "no additional amount of factual investigation by [the defendant] would have revealed any 'inaccuracy' in its reporting of the [disputed] account because there was none." *Id.* For this reason the Court finds TRW is entitled to summary judgement on the issue of its alleged failure to adequately reinvestigate the ITT debt.[2]

■ Further, TRW has also shown that Sears did not deny Plaintiff credit due to the ITT debt which was reported on his TRW credit report at one time. In the prior motion Plaintiff produced a letter from Sears which states that Sears denied his request for credit "in whole or in part" due to credit information obtained from TRW and Equifax. The Court found this suggested that the TRW report had contained adverse information. However, TRW has obtained an affidavit from a Sears official which establishes that in fact Sears did not deny Plaintiff's credit due to the ITT account. *See* Affidavit of Fred Stokes. Indeed this affidavit represents that "Mr. Batdorf's TRW consumer report did not contain any derogatory credit account information." Stokes Affida-

---

1. TRW reported that the "last payment" was made on April 24, 1993, but in fact on that date ITT wrote off the account as uncollectible. Plaintiff never made any payments on this loan. Though the TRW was "inaccurate" in this limited respect, this inaccuracy was beneficial to Plaintiff because it suggested that he had made some payments, where in fact he had not.

2. TRW also contends Plaintiff only contested the date that ITT "charged off" the debt, as reported by TRW, not the underlying debt itself. TRW thus argues it had no duty to reinvestigate the debt itself. However, the Court need not reach this issue because the Court finds above that the ITT entry was accurate.

vit, p. 2. This shows Plaintiff was not denied credit due to the ITT account.[3]

The Sears affidavit also supports TRW's contention that the ITT debt was deleted from Plaintiff's credit report in April of 1995. In the prior order the Court ruled in favor of TRW on Plaintiff's claim that the ITT was over seven years old and thus TRW violated the Act by reporting obsolete adverse credit data. Under the Act, adverse credit information may not be reported if it is over seven years old. 15 U.S.C. § 1681c. The ITT debt was charged off on July 20, 1988, and therefore this credit information would have become "obsolete" under the statute in July of 1995. TRW contends that the information was deleted from Plaintiff's credit report in April of 1995, before the information became obsolete. In opposition to the instant motion, Plaintiff argues (as he did in the prior motion) there is no evidence that TRW deleted the ITT entry in April of 1995. However, TRW has shown that it follows an internal "purge" policy of deleting entries which are 6 years, 9 months old. Under this policy TRW contends the ITT entry was deleted in April of 1995, which fell within the seven-year period. In addition TRW has shown that the ITT entry was deleted from Plaintiff's credit report at least by October of 1995, at which time Sears received Plaintiff's credit report. Though this is after the seven-year period, Plaintiff has shown no evidence that the ITT account remained on his TRW credit report after the seven-year period elapsed in July of 1995. For this reason the Court reiterates that TRW cannot be held liable under the Act for reporting obsolete data on the ITT account.

### CONCLUSION

For the above reasons the Court GRANTS TRW's motion for summary judgement. TRW has shown that it uses reasonable procedures to ensure that its subscribers, including KCFCU, access credit reports only for permissible purposes. TRW has also shown that the ITT entry on Plaintiff's credit report was accurate, and therefore the Court need not reach the issue of whether TRW used reasonable procedures to reinvestigate this entry. Further, Sears did not deny extending credit to Plaintiff because of the ITT report. To the contrary, Sears has represented that no adverse credit information appeared on Plaintiff's credit report which it received from TRW in the Fall of 1995.

IT IS SO ORDERED.

---

**3.** Plaintiff's supplemental affidavit suggests for the first time that he may have been denied employment due to his credit report. However, Plaintiff does not present sufficient proof to survive this motion for summary judgement. Plaintiff merely shows or alleges that (1) an entity named "Staffing Partners" ran a newspaper ad for (what appears to be) day-laborer jobs, (2) Staffing Partners does not hire based on personal appearance, and (3) Staffing Partners asked him to sign a release form so that it could receive his credit report. Plaintiff presumably was not hired, but there is no showing that Staffing Partners ever received his credit report or, even if it had, that it did not hire Plaintiff due to information on the credit report.