**Henry McMILLAN**

v.

**EXPERIAN, et al.**

**No. 3:99CV1481(JBA), 3:99CV1482(JBA).**

United States District Court,
D. Connecticut.

Oct. 19, 2001.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for plaintiff.

Ann H. Rubin, Carmody & Torrance, New Haven, CT, Mark L. Tamburri, John M. McIntyre, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Experian Information SVC, Inc., defendant.

Robert W. Allen, Lori B. Alexander, Matthew A. Sokol, Tyler, Cooper & Alcorn, New Haven, CT, Jill Hartley, Eileen C. Mosley, Michael G. Albano, Sabia & Hartley, LLC, Hartford, CT, for Associates National Bank, defendant.

Robert W. Allen, Tyler, Cooper & Alcorn, New Haven, CT, Donald E. Frechette, Joshua Laurence Milrad, Jeffrey J. Medeiros, Edwards & Angell, Hartford, CT, for Fleet Bank, defendant.

## MEMORANDUM OF DECISION
### [##163, 182, 201]

ARTERTON, District Judge.

## I. Introduction

Following a series of credit denials in 1998 and 1999, plaintiff Henry McMillan discovered that his credit report had been erroneously merged with that of another Henry McMillan, later determined to be plaintiff's son. Plaintiff's credit was satisfactory; his son's was not. Plaintiff filed suit against two credit reporting agencies and several other entities allegedly responsible for reporting incorrect credit information, including defendant Associates National Bank, alleging that Associates failed to properly investigate the disputed accounts and impermissibly accessed his credit report, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*[1] Plaintiff also asserts state law defamation and misrepresentation claims against Associates.

Associates has moved for summary judgment. For purposes of this motion, Associates argues that "[e]ven if [it] did violate the FCRA, which it clearly did not, it is undisputed that plaintiff did not suffer any damages as a result of Associates' purported violation," and that it is therefore entitled to summary judgment.

## II. Motion to Strike

Associates has moved to strike plaintiff's affidavit submitted in opposition to summary judgment as violative of Fed.R.Civ.P. 56(e)'s requirement that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Paragraphs One through Three of Mr. McMillan's affidavit state that plaintiff received copies of his credit reports from Trans Union, Equifax and Experian, which included information about who had ob-

1. Plaintiff has since settled with all defendants but Associates.

tained copies of his credit report. Copies of parts of those credit reports were attached as exhibits to his affidavit. Paragraph Four states that "[i]n August 1999, [plaintiff] was denied car insurance by Colonial Penn based on [his] Experian credit report." According to Associates, because the partial credit reports are incomplete, unverified and hearsay, the exhibits to plaintiff's affidavit must be disregarded by this Court. Associates further argues that Paragraph Four is inadmissible hearsay because plaintiff refers to statements made to him by Colonial Penn Insurance Co. without submitting any statement to that effect by Colonial, and that Paragraph Four contradicts plaintiff's previous deposition testimony.

The Second Circuit has recently reiterated that "[a]ffidavits submitted to defeat summary judgment must be admissible themselves *or must contain evidence that will be presented in an admissible form at trial." Santos v. Murdock,* 243 F.3d 681, 684 (2d Cir.2001) (emphasis added) (*citing Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 (stating that nonmoving party need not "produce evidence in a form that would be admissible at trial" but must "by her own affidavits ... designate specific facts showing that there is a genuine issue for trial")); *see also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 924 (2d Cir.1985) (a plaintiff "cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial") (internal citations omitted).

▮ Here, plaintiff's sworn statements in Paragraphs One through Three of his affidavit, although perhaps not in a form adequate to make the attached credit report excerpts admissible at trial, do satisfy Rule 56(e)'s requirement of setting forth evidence that will be presented in admissi-

ble form at trial, as defendant has identified nothing that suggests that the credit reports attached to plaintiff's affidavit could not be admitted at trial with the appropriate foundation under the business record exception to the hearsay rules, Fed. R.Evid. 803(6). Thus, the Court concludes that Paragraphs One through Three and the attached exhibits will be considered for purposes of this motion for summary judgment, and defendant's motion to strike is denied as to these paragraphs and the attached exhibits.

▮ Paragraph Four, however, suffers from a serious deficiency. First, plaintiff has not identified any basis for his knowledge of the reasons for the Colonial Penn insurance denial. *See Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2d Cir.1986) (affidavit struck where it "contains no information to indicate a basis in personal knowledge for the affiant's ... statement"). If plaintiff's basis for his knowledge of the reason for the denial is what a Colonial Penn representative told him, his testimony on that fact would be inadmissible hearsay because offered for the truth of its contents. "An affidavit made on secondhand information and hearsay is not made on the 'personal knowledge' of the affiant for the purposes of Rule 56(e)." *Isaacs v. Mid America Body & Equip. Co.,* 720 F.Supp. 255, 256 (E.D.N.Y.1989); *accord Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988) ("a hearsay affidavit is not a substitute for the personal knowledge of a party"). Thus, in the absence of an affidavit or other admissible evidence from Colonial Penn as to the reason for the credit denial, defendant's motion to strike is granted in part as to the part of Paragraph Four that explains the reason for the denial of insurance. *See Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2d Cir.1999) (affidavit of

employee as to reason why he was not hired by defendant employer was "hearsay that would not be admissible at a trial" and therefore could not be relied on in opposing summary judgment).[2]

## III. Factual Background

The following facts are undisputed for purposes of this motion for summary judgment. In September 1998, Mr. McMillan was informed by Wachovia Bank that his Wachovia credit card, which had been issued earlier that year, would be "discontinued." Thus, in November 1998, when plaintiff attempted to use the Wachovia credit card at the Hampton Hotel in North Carolina, he was denied credit under embarrassing circumstances. Plaintiff was also denied a low-interest American Association of Retired Persons ("AARP") credit card for which he had been previously approved in December 1998.

Concerned about his credit rating, on December 29, 1998, plaintiff contacted two credit reporting agencies, Experian and Equifax, and informed them that various accounts listed on his credit reports, including the Associates account that gives rise to this action, were not his credit card accounts. In response to inquiries by Experian and Equifax, Associates compared the social security number and date of birth for the Henry McMillan on record as the owner of the Associates account with that of plaintiff Henry McMillan, which matched, and Associates reported that the account did indeed belong to plaintiff. However, the actual Associates account owner had a different home address, telephone number, place of business and work phone number than plaintiff Henry McMillan, which Associates did not report. Experian and Equifax continued to list the Associates account on plaintiff's credit report until some time after August 27, 1999 when Associates instructed the credit reporting agencies to delete the account from plaintiff's credit report.[3]

Between January 1999 and the end of August 1999, plaintiff's Experian and Equifax credit reports were received by various financial entities including Household Bank, Citibank Visa and Capital One Bank. In August 1999, plaintiff applied for insurance with Colonial Penn and was rejected. Colonial Penn requested plaintiff's Experian credit report on August 28, 1999. In late September 1999, at the direction of his lawyer, plaintiff applied for a Fleet Bank credit card and was rejected in October 1999. Fleet accessed plaintiff's Trans World credit report on September 29, 1999.

## IV. Discussion

### A. *Summary Judgment*

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex*

2. However, the Court notes that the excerpts of plaintiff's Experian credit report attached to his affidavit indicate that Colonial Penn requested plaintiff's credit report to conduct insurance underwriting on August 28, 1999, and that the existence of such request is properly considered as part of the summary judgment record before this Court.

3. There is no evidence in the record indicating when, if ever, the Associates account was actually removed by the credit reporting agencies.

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir. 1998). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995).

The initial burden of demonstrating the absence of a disputed issue of material fact lies with the moving party. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *LeBoeuf, Lamb, Greene & MacRae v. Worsham,* 185 F.3d 61, 64 (2d Cir.1999). "[W]here, as here, the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 271 (2d Cir.1999) (citing *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 95 (2d Cir.1998)); *see also LaBounty v. Coughlin,* 137 F.3d 68, 72 (2d Cir.1998) ("The defendants' burden 'will be satisfied if [they] can point to an absence of evidence to support an essential element of the nonmoving party's claim.' ") (quoting *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995)).

If the moving party meets this burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Byrnie v. Town of Cromwell,* 243 F.3d 93, 101 (2d Cir.2001). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, that party must "come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise." *Trans Sport v. Starter Sportswear,* 964 F.2d 186, 188 (2d Cir.1992) (citation and internal quotations omitted); *see also Gibson v. American Broadcasting Cos.,* 892 F.2d 1128, 1132 (2d Cir.1989).

**B.  *FCRA Claim***

■ The FCRA, 15 U.S.C. § 1681s–2(b), imposes a duty on entities responsible for furnishing information to consumer reporting agencies following the receipt of notice of a dispute regarding the accuracy of information provided by that furnisher to the consumer reporting agency to:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;[4]

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

---

4.  15 U.S.C. § 1681i(a)(2) requires a consumer reporting agency to promptly report notice of any dispute from a consumer to the person or entity who provided the information in dispute.

Where a plaintiff claims a negligent violation of the FCRA, he must also provide some evidence from which a reasonable factfinder could conclude that he suffered actual damages as a result of defendant's actions in order to survive summary judgment. *See* 15 U.S.C. § 1681o [5]; *see also Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1111–12 (2d Cir.1992); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1161 (11th Cir.1991).[6]

■ Associates argues that plaintiff has failed to come forward with evidence of actual damages caused by Associates' alleged negligence. As the party whose motion focuses on an element of the non-moving party's case, Associates points to the absence of evidence of actual damages, and the burden then shifts to the non-moving plaintiff to demonstrate the existence of a material factual dispute as to the existence of damages. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; *LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir.1998).

### 1. Economic damages

■ Notwithstanding the hearsay deficiency of plaintiff's affidavit, the evidence shows that plaintiff applied for insurance through Colonial Penn, Colonial Penn requested and received plaintiff's credit report while it contained the inaccurate negative information about the Associates account, and plaintiff was denied insurance. Thus, a reasonable factfinder could infer that the denial of insurance resulted from the negative credit report and was thus caused by Associates' allegedly negligent investigation. *See Lendino*, 970 F.2d at 1111–12 (summary judgment inappropriate where jury could conclude that defendant caused credit denial).

However, whether a jury could also conclude that plaintiff suffered any damages as a result of that denial is much less clear. Plaintiff claims that the Colonial Penn denial of insurance in August 1999 "is fatal to [Associates'] position that 'no denial' equals 'no damages.' " Pl. Br. at 4. Associates, however, argues that even if the Colonial Penn insurance denial is properly considered part of the summary record, plaintiff "has not demonstrated that he was forced to obtain insurance at a higher premium, that he was unable to obtain insurance and suffered an uninsured loss, or that he was otherwise adversely affected by the insurance application denial." Def. Reply Br. at 3. The Court is compelled to agree with Associates that no inference of economic damage resulting from the Colonial Penn insurance denial can reasonably be drawn from this record.[7]

Plaintiff also argues that the denial of the Fleet credit card in October 1999 is

---

5. 15 U.S.C. § 1681o provides: "Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of the failure; (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court."

6. "Willful noncompliance" with the FCRA is governed by § 1681n, which provides for payment of actual damages or statutory damages between $100 and $1,000. As Associates correctly observes, plaintiff's complaint does not allege that Associates' failure to comply with § 1681s–2(b) was willful, *compare* Complaint, 3:99cv1481 (JBA), ¶ 24, *with* ¶ 25; Complaint, 3:99cv1482 (JBA), ¶ 28, *with* ¶ 29; and plaintiff's brief does not argue that Associates' noncompliance was willful. Accordingly, the Court construes plaintiff's complaint as alleging negligent noncompliance with FCRA.

7. However, as discussed below, Associates has not demonstrated that the Colonial Penn denial cannot be relied upon as a basis for plaintiff's claim of emotional damages.

sufficient evidence of damages to require trial. However, Associates has submitted an affidavit stating that "On August 27, 1999, Associates contacted the consumer reporting agencies to which it reports and instructed them to delete the trade line item relevant to the Account from plaintiff's credit report." Hammond Aff. ¶ 6. Although plaintiff's brief raises hypothetical questions challenging the adequacy of this response, he does not identify any evidence suggesting that Associates did not follow its customary or satisfactory procedures or that Associates informed the consumer reporting agencies that the removal order was for some reason which might have prompted the agencies to leave the account on plaintiff's credit report (e.g., removal because of pending litigation). Thus, on this record, the Court finds that no reasonable trier of fact could conclude that the Fleet card denial in October 1999 was caused by Associates' negligence, as Associates had instructed the consumer reporting agencies to delete the account in the end of August 1999.[8]

Finally, plaintiff contends that because of the current practice of "prescreening" or "providing information about consumers who meet certain criteria to persons who wish to offer them credit," Pl. Br. at 4, "harm necessarily results from incorrect adverse information from a furnisher, whether the reporting agency discloses (to a subprime creditor) or does not disclose (to a potentially favorable creditor whose advance selection criteria rejected Mr. McMillan out of hand) the incorrect information." Pl. Br. at 13.

The Second Circuit considered a similarly speculative damages argument in *Casel-*

*la v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir.1995), in which the plaintiff had argued that he suffered actual damages because he had lost opportunities in the home loan mortgage market to take advantage of favorable interest rates and low housing prices as a result of erroneous credit reports. Although plaintiff had presented evidence that "he and his companion were actively seeking to purchase a home, and that at various times during [the year in which the erroneous information was on plaintiff's credit report] they had sufficient resources to obtain an 80 percent home mortgage in Casella's community," *id.* at 475, the Second Circuit held that "in the absence of any evidence that [Casella] made an offer to purchase property or applied for a home mortgage, the 'lost opportunity' damages he alleged were too speculative." *Id.* Here, acceptance of plaintiff's argument that harm *necessarily* results from dissemination of incorrect information to pre-screeners, absent any showing that he would otherwise have been offered or extended credit or that he suffered any economic or other damage as a result of the pre-screening, would require this Court to jettison the requirement of actual damages, in contravention of both the statutory language and Second Circuit precedent.

### 2. *Emotional distress damages*

■ It is well-settled that actual damages under the FCRA "may include humiliation and mental distress, even in the absence of out-of-pocket expenses." *Casella*, 56 F.3d at 474 (*citing Guimond v. Trans Union Credit Info. Co.*, 45 F.3d

---

**8.** Even were there were evidence that Associates' negligence in some way contributed to the Fleet denial, notwithstanding Associates' August 1999 letter, plaintiff has not identified any damage resulting from the denial itself. It is undisputed that plaintiff applied for the

Fleet card at his counsel's direction, and plaintiff has not set forth any evidence that he suffered either economic or emotional damages as a result of Associates' conduct in connection with the denial.

1329, 1333 (9th Cir.1995); *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir.1983); *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir.1982); *Bryant v. TRW, Inc.*, 487 F.Supp. 1234, 1240 (E.D.Mich. 1980), *aff'd*, 689 F.2d 72 (6th Cir.1982)).

In *Casella*, the Second Circuit upheld the grant of summary judgment in favor of a credit reporting agency where the plaintiff had presented no evidence that the defendant had provided the plaintiff's credit report to any third party during the time period in which the defendant credit reporting agency included incorrect information on the plaintiff's credit report.[9] Thus, plaintiff's argument "boil[ed] down to the bare contention that he is entitled to damages for pain and suffering simply because he *knew* of an inaccurate and potentially damaging item in his credit report." 56 F.3d at 475. The Second Circuit reject-

ed that contention, and while declining to reach whether a cause of action existed under the FCRA absent a denial of credit, held that "we do not believe a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency." *Id.*[10]

■ Associates argues that it is entitled to summary judgment because there is no evidence of any emotional distress suffered by plaintiff caused by its conduct. However, drawing all inferences in the light most favorable to plaintiff, the evidence in the record is equivocal as to whether plaintiff suffered emotional distress as a result of Associates' conduct, thus precluding entry of summary judgment on the absence of damages.[11]

9. *Casella* involved an alleged FCRA violation by a consumer reporting agency, governed by § 1681e, rather than by a furnisher of credit information, such as Associates here. Whether the *Casella* requirement that a third party have seen the derogatory misinformation would be met in a furnisher liability case when the furnisher disseminated the inaccurate information only to a consumer reporting agency need not be resolved here because plaintiff's credit report reveals that numerous entities accessed his report during the time period in which Associates' misinformation allegedly was present on plaintiff's credit report, including Colonial Penn, Household Bank, Capital One, and Citibank Visa.

10. Thus, in the Court's view, neither plaintiff nor defendant properly characterizes the holding of *Casella*. Contrary to plaintiff's assertions, *Casella* does not stand for the proposition that a denial of credit is not necessary to make out a FCRA violation, and contrary to defendant's assertions, *Casella* does not itself *require* a denial of credit to make out a FCRA violation. Instead, *Casella* stands for the proposition that recovery under the FCRA for pain and suffering is precluded where the plaintiff cannot show that a creditor was aware of the inaccurate information, because mere knowledge by a plaintiff of *potentially*

damaging credit information is insufficient FCRA damages.

11. Because a reasonable jury could conclude that the Colonial Penn insurance denial resulted from misinformation negligently supplied by Associates this Court need not resolve the question left open in *Casella*, of whether a denial of credit or other adverse action is necessary to sustain a claim for damages for emotional distress under the FCRA. *Cf. Guimond*, 45 F.3d at 1333 (holding that inaccuracies in the credit report alone are sufficient to justify an award of damages for the embarrassment stemming therefrom absent any denial of credit); *Dalton v. Capital Assoc.*, 257 F.3d 409, 418–19 (4th Cir.2001) (holding that where a plaintiff alleged that "he suffered emotional distress and loss of reputation as a result of the false report," summary judgment was inappropriate on plaintiff's FCRA claim against a consumer reporting agency alleging negligence in reporting his criminal history to a prospective employer even where the undisputed evidence showed that the employer did not hire the plaintiff for reasons unrelated to the false report).

Plaintiff's deposition testimony indicates that he was humiliated only by the Hampton Hotel incident, which occurred in 1998, prior to the alleged negligence by Associates in investigating the disputed information, and thus cannot establish damages caused by Associates. However, in response to a question about mental anguish, plaintiff replied "Well, like, how did this happen, why would someone do that," and clarified that he was referring to "the credit, my credit being bad. I pay my bills. So I just didn't understand why that was happening." Pl. Dep. at 62–63. Thus, while a jury might conclude that this mental anguish, like plaintiff's humiliation, was related to the Hampton Hotel incident, such a conclusion is not compelled by plaintiff's general description of distress resulting from his bad credit, and a jury well could determine that plaintiff was referring to all the conduct which contributed to his bad credit rating, including Associates' alleged negligence in investigating the reported inaccuracy. Accordingly, although this is a close case, there is sufficient evidence in the record to permit a jury to conclude that plaintiff suffered actual damages caused by Associates' conduct, and summary judgment is therefore denied on plaintiff's FCRA claim.

## C. Defamation and Misrepresentation Claims

Associates also has moved for summary judgment on plaintiff's state law defamation and misrepresentation claims. The FCRA, 15 U.S.C. § 1681h(e), expressly provides that "[e]xcept as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy or negligence with respect to the reporting of information against.... any person who furnishes information to a consumer reporting agency ... based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer."

Courts that have considered the meaning of malice, in this context, "have borrowed the meaning of the term used in the context of libel litigation; in other words, an allegedly defamatory statement will be deemed to have been made with malice if the speaker knew it was false or acted with reckless disregard of its truth or falsity." *Whelan v. Trans Union Credit Reporting Agency,* 862 F.Supp. 824, 833 (E.D.N.Y.1994) (citing *Thornton v. Equifax, Inc.,* 619 F.2d 700, 705 (8th Cir.1980); *Wiggins v. Equifax Services, Inc.,* 848 F.Supp. 213, 223 & n. 17 (D.D.C.1993)). Willful, in turn, has been defined as "requiring a showing that the agency knowingly and intentionally committed an act in conscious disregard for the rights of others." *Id.* (citing *Wiggins,* 848 F.Supp. at 219; *Stevenson v. TRW Inc.,* 987 F.2d 288, 293–94 (5th Cir.1993)).

■ Construing the facts most favorably to plaintiff, Associates' sole investigation involved comparing plaintiff's name and Social Security number to that of the account holder, and reporting the account as belonging to plaintiff, when in fact the account holder had a different address, phone number, date of birth, employment address and work phone number. Although these facts are sparse, in the absence of any unrebutted evidence from Associates as to the reasonableness of its actions in reporting the account as belonging to plaintiff, the Court cannot say that no jury could conclude that Associates acted with reckless disregard for the truth or falsity of the information it reported. Thus, Associates is not entitled to summary judgment on plaintiff's defamation claim.

■ Finally, Associates argues that it is entitled to summary judgment on plain-

tiff's misrepresentation claim because a cause of action for misrepresentation only lies where the defendant makes a false representation as a statement of fact, knowing it was untrue, and for the purpose of inducing plaintiff to act, and where plaintiff does in fact act upon the representation. Def. Br. at 8 (*citing Statewide Grievance Comm. v. Egbarin,* No. 19801, 2000 WL 33116077, at *4 (Conn.App. Jan.23, 2001)). Plaintiff's terse response that Associates "misses the point" that it "made the representation through the credit reporting agencies," Pl. Br. at 22, does not address the undisputed fact that here plaintiff never believed the misrepresentation made by Associates nor relied upon it in any way. *Cf. J. Frederick Scholes Agency v. Mitchell,* 191 Conn. 353, 357, 464 A.2d 795 (1983) (describing elements of misrepresentation claim). Associates' motion for summary judgment is therefore granted as to plaintiff's misrepresentation claim.

## V. Conclusion

For the reasons set forth above, Associates' motion to strike [Doc. # 201] is DENIED IN PART as to Paragraphs One through Three and part of Paragraph Four and GRANTED IN PART as to the remaining part of Paragraph Four. Associates' motions for summary judgment [Doc. ## 163 and 182] are DENIED IN PART as to plaintiff's FCRA and defamation claims, and GRANTED IN PART as to plaintiff's misrepresentation claim.

IT IS SO ORDERED.